IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LAURA PALMER,                          *
                                       *
Plaintiff,                             *
                                       *
v.                                     *        Case No. 4:04-CV-21 (CDL)
                                       *
STEWART COUNTY SCHOOL DISTRICT,        *
DR. BETTYE RAY, individually and       *
in her official capacity as            *
Superintendent of Stewart County       *
School District,                       *
                                       *
Defendants.                            *

O R D E R

Pending before the Court is Defendants' Motion for Partial Summary Judgment. For the reasons discussed below this motion is DENIED in part and GRANTED in part.

## I. INTRODUCTION

Plaintiff makes the following claims: (1) race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; (2) violation of her rights under the First Amendment to the United States Constitution and under the Due Process Clause of the Fourteenth Amendment as enforceable through 42 U.S.C. § 1983; (3) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; and (4) violations of Georgia constitutional, statutory, and common law, including: due process, slander/defamation/libel, breach of contract, tortious interference with business relations, intentional infliction of emotional distress, and negligent retention.

Defendants, Stewart County School District ("School District") and Dr. Bettye Ray, have filed a Motion for Partial Summary Judgment as to each of Plaintiff's claims, except Plaintiff's claim for violation of the Fair Labor Standards Act.  For the reasons that follow, the Court grants summary judgment as to: (1) all of Plaintiff's Title VII claims against Dr. Ray in her individual capacity; (2) Plaintiff's claim of retaliation brought under the Equal Protection Clause of the United States Constitution; (3) Plaintiff's claims of retaliation brought under the First Amendment to the United States Constitution and the Georgia Constitution; (4) Plaintiff's claims regarding substantive due process under the United States Constitution and the Georgia Constitution; (5) Plaintiff's state law breach of contract claim; (6) Plaintiff's state law negligent retention claim; and (7) Plaintiff's state law intentional infliction of emotional distress claim.

The Court denies Defendants' Motion for Summary Judgment as to Plaintiff's remaining claims, which are as follows:  (1) Plaintiff's race discrimination and related retaliation claim under Title VII, § 1981, and § 1983 against the School District; (2) Plaintiff's race discrimination and related retaliation claims under § 1981 and § 1983 against Dr. Ray in her individual capacity; (3) Plaintiff's procedural due process claim under the United States Constitution and the Georgia Constitution against the School District; (4) Plaintiff's state law claim against Defendants for slander/defamation; and (5) Plaintiff's state law claim against Dr. Ray for tortious interference with business relations.

## II.  BACKGROUND

Plaintiff's Complaint arises from the termination of her employment on June 10, 2003, by the Stewart County School District upon the recommendation of Dr. Bettye Ray, the Superintendent of Schools for the School District.  Plaintiff has filed suit against her former employer, the School District, and Dr. Ray, in both her official and individual capacities.  Plaintiff contends that Defendants discriminated against her based upon her race (black) by paying her less and providing her with less benefits than her white predecessor when Plaintiff was initially hired.  Plaintiff also contends that Defendants discriminated against her when they fired her.  In support of this claim, Plaintiff maintains that the conduct for which she was terminated was far less egregious than conduct engaged in by a comparable white employee who was not fired for such conduct.  Plaintiff contends that Defendants' racially discriminatory treatment violates her rights under Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment.  She seeks to remedy these violations under both Title VII and 42 U.S.C. § 1983.

Plaintiff also contends that her firing was in retaliation for her complaints of discrimination in violation of Title VII and § 1981.  She seeks to remedy these violations under both Title VII and § 1983.

In addition to her race-based retaliation claims, Plaintiff also alleges that Defendants violated her First Amendment right of free speech when they allegedly fired her for complaining about discrimination.  She seeks to vindicate these rights under § 1983.

Plaintiff also contends that her constitutional due process rights were violated when she was fired without notice and opportunity for a hearing. Plaintiff seeks to remedy these alleged constitutional violations pursuant to § 1983.

Finally, Plaintiff alleges a variety of state law claims relating to Defendants' termination of her employment.

To understand the context of Plaintiff's claims, it is necessary to examine the history that predated her tenure with the School District. Dr. Ray began her employment with the School District as Superintendent in July 1999. At that time, the School District was experiencing numerous problems with its payroll system. Due to these problems, Dr. Ray implemented strict control over the payroll process. Despite these controls, the payroll/personnel clerk at that time, Connie Ledford (a white female), was unable to adequately perform her job.

Dr. Ray verbally counseled Ledford regarding her poor performance. Ledford was also reprimanded in writing on two occasions. First, in a letter dated February 28, 2000, Dr. Ray reprimanded Ledford for numerous errors in the payroll checks and explained that she planned to take further action regarding Ledford's mistakes. Additionally, in a March 1, 2000 letter, Dr. Ray reprimanded Ledford for a delinquent quarterly Tax and Wage Report. As a result of the late report, Ledford was put on six months probation. Ledford was finally terminated in April 2000 when she wrote a series of manual checks after being informed that School District practices prohibited the writing of manual checks.

4

Defendants maintain that the reason for Ledford's termination was not her poor performance, but solely because she wrote the series of manual checks. However, Ledford's separation notice shows the reason for her termination as "[i]nability to grasp Governmental Payroll Accounting." (Defs.' App. III, Ex. F.)

After Ledford's termination, the School District employed several potential payroll/personnel clerks during the spring and early summer of 2000. However, none of these people were able to adequately perform the job. Due to the problems experienced with Ledford and her potential replacements, Dr. Ray and the Stewart County Board of Education ("the Board") decided to hire someone on a temporary basis in order to make sure the employee could do the job before hiring him or her permanently.

Dr. Ray recommended Plaintiff's temporary employment as a substitute payroll/personnel clerk to the Board for the month of July 2000. Plaintiff agreed to employment on a substitute basis and agreed to receive an hourly wage, although Plaintiff testified that she did not know what the hourly wage was when she agreed to the substitute position. Dr. Ray was Plaintiff's direct supervisor.

Plaintiff performed well during the month of July, and the School District continued her employment for a probationary ninety-day period (August 2000 to October 2000). During this probationary period, Plaintiff was paid an hourly rate that increased each month, but Plaintiff did not receive benefits, such as health insurance.[1] During

---

[1]The hourly wages that Plaintiff received these three months was less than that shown on the salary schedule for a personnel/payroll clerk. It appears that Plaintiff's predecessor received the scheduled salary and

this time, Plaintiff did not inquire or complain about the hourly rate and lack of benefits.  Plaintiff successfully completed this ninety-day probationary period and was offered the permanent position of payroll/personnel clerk at the scheduled salary for the position for a person with a high school education, i.e. $22,495.00 annually.

In the fall of 2001, the School District hired Sharon Quarles (a black female) as the central office secretary/administrative assistant.  Quarles was hired according to the standard salary schedule that was in place for secretaries, and she became eligible for benefits after the first thirty days of her employment, even though, like Plaintiff, she was a probationary employee for the first ninety days.  Plaintiff felt that this amounted to favorable treatment of Quarles.  Plaintiff first complained to Dr. Ray, and on December 4, 2001, she complained to the Board that she should have also received the full scheduled salary at the start of her employment in July 2000. Plaintiff requested that she be reimbursed in the amount of $1,501.65, the difference between the scheduled salary and the amount that she was actually paid from July to October 2000.  Plaintiff has never been paid this amount.

In her capacity as payroll/personnel clerk, it was Plaintiff's job to print monthly payroll checks for regular and overtime pay for

---

benefits from the start of her employment.  Additionally, the parties disagree as to why Plaintiff did not have health insurance during the probationary period.  Plaintiff states that Dr. Ray would not allow her to enroll in the State Health Benefit Plan until November 2000, while Defendants maintain that Ms. Palmer was responsible for her own enrollment in the State Health Benefit Plan and "[i]f she mistakenly believed that [Dr. Ray] had told her she was not eligible for benefits, she could have and should have said so."  (Ray Aff. ¶ 23.)

employees of the School District.  All parties agree there are many steps in the payroll process that must be competed before Plaintiff could generate the checks; however, the record reflects that the parties do not agree on exactly what these steps are.  First, employees of the School District had to submit their time sheets for regular time and any overtime[2] to their supervisors for approval.[3] The supervisors would approve and sign the time sheets before submitting them to Plaintiff.  The supervisors were then required to submit the time sheets to Plaintiff seven days prior to payroll. However, Plaintiff stated that the supervisors were frequently late in submitting the time sheets.

After receiving the supervisor-approved time sheets, Plaintiff would review the sheets and submit the same to Dr. Ray for approval. Dr. Ray had to approve all employee overtime for employees of the school system.  However, Defendants maintain that the overtime time sheets had to be approved by the employees' supervisors and Dr. Ray *before* Plaintiff printed the payroll checks.  Plaintiff, however, contends that there was no requirement that Dr. Ray approve the time sheets before she printed the checks for overtime.  Instead, Plaintiff testified that she would routinely attach the overtime time sheets to the overtime checks, and Dr. Ray would sign both at the same time. Assertions from the previous payroll/personnel clerk, Ledford, support

_____

[2]Employees had to complete a separate time sheet showing all overtime worked.

[3]However, Plaintiff maintains there was no requirement that central office employees have their time sheets approved prior to the time the checks are printed.

7

Plaintiff in this regard as Ledford stated that all payroll checks were printed first and then presented to Dr. Ray with supporting documentation for approval and signing; no prior approval from Dr. Ray was necessary.

In May 2003, Dr. Ray learned that a number of various school districts in Georgia had been sued for allegedly failing to pay overtime to some of their nonexempt employees. In Plaintiff's presence, Dr. Ray engaged in at least two general conversations or discussions regarding the issue of overtime. Dr. Ray maintains that she never asked anyone to undertake an investigation to see if any employee of the School District was owed overtime wages. However, Plaintiff testified that Dr. Ray told her that she "wanted to be proactive and pay overtime to all . . . classified employees . . . that were entitled to it" during the month of May 2003. (Pl.'s Dep. at 178.)

Based on this statement from Dr. Ray, Plaintiff decided to calculate the amount the overtime that she had worked for the three previous years. She prepared time sheets showing this amount of overtime, but because Plaintiff had kept no written records of the time that she worked, her time sheets were created solely from her memory of the past three years.[4]

---

[4]Dr. Ray was under the impression that central office employees were not entitled to overtime. Therefore, Plaintiff did not (after her initial four-month probationary period) keep time sheets showing the time she worked. However, Plaintiff and Sharon Quarles did work overtime related to a federal grant entitled the "Twenty-first Century Program," which the school system received through the Morehouse School of Medicine. The wages that each received from this work were paid from the grant, and Plaintiff and Quarles had to submit time sheets to receive payment for that work.

Late in the evening on the same day she was to process the payroll checks, Plaintiff placed these time sheets in Quarles's inbox and asked Quarles to ask Dr. Ray to sign off on time sheets. Later that same evening, Plaintiff realized that Dr. Ray had not looked at the time sheets. Therefore, Plaintiff retrieved the time sheets from Quarles and processed the payroll checks. This included a check payable to Plaintiff in the amount of $4,185.84, which included her time for the Twenty-first Century Grant and overtime for the past three years.

Plaintiff then attached the time sheets to her overtime check and placed them in Dr. Ray's office, along with all the other School District employees' checks and time sheets. According to Plaintiff, this was the same procedure she followed every month with payroll because there was no requirement that Dr. Ray approve the time sheets before Plaintiff printed the checks. Defendants maintain that this was not the proper procedure and that Plaintiff did not even include her time sheets with the $4,185.84 check. All parties agree, however, that Plaintiff had no discussion with Dr. Ray regarding her overtime or the $4,185.84 check prior to Plaintiff leaving the same in Dr. Ray's office on the day Plaintiff ran the payroll.

Dr. Ray initially signed all of the checks with her signature stamp. However, upon review of the checks, she removed the $4,185.84 check payable to Plaintiff. The next day, Dr. Ray and Plaintiff spoke about the check, and Plaintiff explained that it was for her overtime for both the Twenty-first Century Grant and for the past three years. Dr. Ray testified that she "forcefully" explained to Plaintiff that

9

she could not approve any such payment because the payment of back overtime to any employee would have to be approved by the Board.  (Ray Aff. ¶ 32.)   Plaintiff's recollection of the conversation is that Dr. Ray did not appear upset, but simply told Plaintiff that the Board would have to approve any overtime that involved time worked beyond the current fiscal year.   The $4,185.84 check was voided, and Dr. Ray's signature was cut from the check.

Several days later, Plaintiff presented Dr. Ray with a second check payable to Plaintiff in the amount of $2,348.68, representing Plaintiff's calculation of her overtime for that fiscal year. Plaintiff testified that based on her earlier conversation with Dr. Ray, she assumed that Dr. Ray could approve her overtime for the current fiscal year.  Dr. Ray refused to sign the check and explained that only the Board could approve unpaid overtime.

Plaintiff appeared before the Board regarding her overtime during the June 3, 2003 work session.  According to Plaintiff, she provided the Board with the rules and regulations regarding overtime from the Georgia Department of Labor.  The Board did not agree to pay Plaintiff the retroactive overtime.   Plaintiff then sent each Board member a letter dated June 7, 2003 in which she outlined her contentions regarding overtime pay.  She also complained in that letter that she was subjected to discrimination early in her employment because she did not receive the scheduled salary and benefits during the probationary period of her employment.

In early June 2003, Dr. Ray informed the Board that Plaintiff had written herself two unauthorized checks.  For that reason, Dr. Ray

recommended that the Board vote to terminate Plaintiff.  The Board agreed, and Plaintiff was terminated on June 10, 2003, three days after Plaintiff claims she complained by letter of discrimination. According to the Separation Notice, Plaintiff was terminated because she "[w]rote extra payroll checks to herself without prior approval." (Ray Dep., Ex. 2.)

### III.  SUMMARY JUDGMENT STANDARD

A party who establishes that no genuine issues of material fact exist to be tried is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).  In deciding whether genuine issues of material fact exist to be tried, the court must review the evidence, and all factual inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).  The court may not weigh conflicting evidence nor make credibility determinations.  *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  When evaluating whether genuine issues of material fact exist to be tried, the Court must determine whether a reasonable jury could find for the nonmovant. *Id.* at 919.

### IV.  DISCUSSION

A.   PLAINTIFF'S FEDERAL LAW CLAIMS

1.   Race Discrimination

Plaintiff makes two claims of race discrimination.  First, she claims that her initial compensation and benefits were less than those received by her predecessor, Connie Ledford.   Second, Plaintiff

maintains that she was terminated for conduct that was far less egregious than conduct engaged in by Ledford that did not result in Ledford's termination.   Plaintiff asserts these claims pursuant to Title VII, § 1981 and § 1983 against the School District and against Dr. Ray in her individual and official capacities.

Preliminarily, the Court notes that under Title VII, only an employer may be held liable for the discriminatory acts of its employees.  In this case, it is undisputed that Plaintiff's employer was the School District.  Therefore, the Court grants summary judgment to Dr. Ray individually on all of Plaintiff's Title VII claims. *Gillis v. Ga. Dep't of Corr.,* 400 F.3d 883, 886 n.6 (11th Cir. 2005).

The Court also observes that while § 1981 provides a cause of action for race discrimination in the employment context, § 1983 provides the exclusive remedy for a § 1981 claim against a state or local government. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (explaining that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); *accord Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).  Therefore, to prevail on her § 1981 claim against the School District, as well as her race discrimination claim under the Fourteenth Amendment, Plaintiff must prove race discrimination and meet the other requirements of § 1983, including establishing that the discrimination was the result of a custom, policy, or practice of the School District.  Plaintiff must also overcome Dr. Ray's qualified immunity defense as to Plaintiff's

§ 1981 claim and her § 1983 claim for an alleged violation of the Fourteenth Amendment.

With this background in mind, the Court turns to each of Plaintiff's race discrimination claims.

　　　　a.　Discriminatory Pay and Benefits

Plaintiff contends that she was hired to replace Connie Ledford, a white female.  She further alleges that the terms and conditions upon which she was hired were less favorable than those provided to Ledford during her employment.  Specifically, Plaintiff was initially paid less than Ledford and was not provided the same benefits.  Plaintiff argues that she was treated differently because of her race.

Plaintiff has offered no direct evidence of race discrimination.  Therefore, the Court analyzes her circumstantial evidence case under the familiar framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Defendants concede that Plaintiff has made out a *prima facie* case by showing that she was paid less than a similarly situated white former employee of the School District.  Therefore, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for treating Plaintiff differently than Ledford.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  Once Defendants satisfy this burden of production, Plaintiff, in order to prevail, must demonstrate that Defendants' "proffered reason was not the true reason for the employment decision."  *Id.* at 256.  Plaintiff can accomplish this "either directly by persuading the court that a discriminatory reason more likely motivated the employer

13

or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*.

In this case, Defendants state that there were legitimate business reasons for hiring Plaintiff on less favorable initial terms and conditions than Ledford. Defendants explain that during the first month of Plaintiff's substitute employment, Plaintiff had no expectation of employment beyond the month and was entitled to only an hourly wage and no benefits. However, Defendants offer no explanation for continuing to pay Plaintiff the lower hourly wage and for failing to provide her with benefits during the next three months. Defendants contend that based on their prior experience, they simply were apprehensive about hiring a permanent personnel/payroll clerk, regardless of Plaintiff's race. Even if Defendants' initial apprehension was warranted, Defendants offer no explanation as to why they did not retroactively pay Plaintiff the scheduled salary and provide her with benefits when she asked for them in 2001, when Defendants arguably knew she could adequately perform the job.

Regarding Plaintiff's claim that Defendants' denial of health insurance benefits was discriminatory, Defendants now agree that Plaintiff should have received these benefits starting in August 2000. In her affidavit, Dr. Ray states that she "recently reviewed the State Health Benefit Plan's terms of enrollment and it is plain to [her] that [Plaintiff] was also eligible for benefits during her ninety day probationary period." (Ray Aff. ¶ 21.) However, Defendants maintain that Dr. Ray did not make a determination about Plaintiff's eligibility for benefits and that it was Plaintiff's responsibility

to apply for these benefits.  They suggest that Plaintiff must have known that she could receive such benefits during her probationary period because she handled the paperwork for another probationary employee.

However, Plaintiff asserts that Dr. Ray specifically told her that she could not apply for health benefits until her probationary period was over.  Plaintiff explained that she did not insist at the time on health coverage because she was a new employee.  Plaintiff did ask for the application of retroactive health coverage later and was denied.

The Court finds that genuine issues of material fact exist as to whether Defendants' stated reasons for treating Plaintiff differently from Ledford in the initial terms and conditions of her employment were pretextual.  Therefore, genuine issues of material fact exist as to whether Defendants discriminated against Plaintiff based upon her race.  Accordingly, the School District's Motion for Summary Judgment is denied as to Plaintiff's Title VII claim arising from the District's disparate treatment insofar as Plaintiff's initial pay and benefits is concerned.

As to whether Defendants are entitled to summary judgment on Plaintiff's § 1981 and Fourteenth Amendment claims brought pursuant to § 1983 requires further analysis.  To prevail on these claims against the School District, Plaintiff must demonstrate that the District's discrimination was the result of a custom, practice, or policy of the District.  *Monell v. N.Y. City of Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Plaintiff appeared before the Board in

15

December 2001, April 2002, and June 2003 regarding her pay, benefits, and overtime salary. The Board decided not to pay her the scheduled salary and not to give her retroactive benefits. Courts have explained as follows regarding the liability of a school district:

> School district personnel decisions by the body entrusted with such decisions are "officially adopted and promulgated." The District is liable for the actions of the Board of Trustees not on the basis of respondeat superior but because the only way the District can act, practically as well as legally, is by and through its Board of Trustees.

*Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1112 (5th Cir. 1980)(citations omitted); *see also Williams v. Valdosta*, 689 F.2d 964, 969 (11th Cir. 1982).[5]

Likewise, the only way the School District in this case could act was through the Board, and Plaintiff has alleged such action. Therefore, the Court finds that genuine issues of material fact exist as to whether Plaintiff has established the School District's liability under § 1983. Consequently, summary judgment is not appropriate in favor of the School District on Plaintiff's § 1981 and Fourteenth Amendment race discrimination claims.

As the Court has noted previously, Plaintiff cannot prevail on her Title VII claims against Dr. Ray in her individual capacity. However, this does not dispose of Plaintiff's § 1981 and Fourteenth Amendment claims against Dr. Ray based upon her alleged discrimination. Dr. Ray maintains that she is entitled to qualified

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

immunity on these claims. *See Johnson v. City of Ft. Lauderdale, Fla.*, 126 F.3d 1372, 1379 (1997). The Court finds that summary judgment is not appropriate in this case as to that defense. The Supreme Court has explained that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants argue that because Dr. Ray violated no clearly established law, she is entitled to immunity for purposes of Plaintiff's § 1983 race discrimination claims.

However, the principal right allegedly violated by Defendants—the right to be free from race discrimination—was clearly established at the time of Plaintiff's employment and discharge. If, on the basis of her race, Dr. Ray intentionally paid Plaintiff less than her white predecessor and denied her benefits while giving her white predecessor benefits, Dr. Ray would not be immune from civil liability. Therefore, the Court finds that genuine issues of material fact exist as to whether Dr. Ray is entitled to qualified immunity on Plaintiff's § 1983 race discrimination claims.

Since genuine issues of material fact exist to be tried, Defendants' Motion for Summary Judgment is denied as to Plaintiff's claim that she was subject to discrimination regarding her initial compensation and benefits.[6] Excluded from this holding, as noted

---

[6]The Court has serious doubts as to whether Plaintiff's claim regarding discrimination in the initial terms and conditions of her employment can survive the statute of limitations. However, since Defendants have not

above, is Plaintiff's Title VII claim against Dr. Ray; Defendants' motion is granted to the extent Plaintiff seeks to hold Dr. Ray individually liable under Title VII.

   *b. Termination Claim*

  Plaintiff also contends that she was discriminated against because of her race when Defendants terminated her employment. She argues that her predecessor engaged in conduct far more serious than the conduct for which Plaintiff was purportedly terminated, and yet Ledford was not terminated for such conduct. In order to establish a *prima facie* case of discriminatory discharge, Plaintiff must show that: "(1) [she] belongs to a racial minority; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees of other races more favorably; and (4) she was qualified to do the job." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir. 1998).

  Plaintiff maintains that she has made this showing because she is a member of a racial minority and was terminated without warning even though her predecessor, Ledford, a white female, who made serious job-related errors, was given numerous warnings and opportunities to correct those errors before she was finally terminated. Plaintiff contends that the School District never allowed her to explain or correct the only two errors—the two checks for overtime—she ever made during her employment with the School District.

---

raised the statute of limitations defense in their Motion for Summary Judgment, it would be inappropriate for the Court to rule upon that issue.

The record supports a finding that Ledford made serious errors in the performance of her job, but that Ledford was verbally counseled and received two written warnings before she was finally terminated. Defendants argue, however, that they treated Ledford and Plaintiff similarly because they immediately fired Ledford for manually writing checks, and Ledford's termination had nothing to do with her poor performance. Therefore, according to Defendants, the fact that Ledford was given numerous prior warnings before termination is irrelevant and does not show that Ledford was treated more favorably.

Contrary to Defendants' position, Ledford's separation notice does not establish that she was fired for manually writing checks. The separation notice shows that her poor performance, the subject of her numerous verbal and written warnings, was the stated reason for her termination. The separation notice specifically declares that Ledford was terminated due to her "[i]nability to grasp Governmental Payroll Accounting." (Defs.' App. III, Ex. F.) A reasonable jury could conclude that by giving Ledford multiple warnings and the opportunity to correct her behavior before being terminated–while Plaintiff received none–could be evidence that Defendants treated Plaintiff less favorably than her white comparator. The Court finds that genuine issues of material fact exist on this issue, and that Plaintiff therefore has produced sufficient evidence of a *prima facie* case to avoid summary judgment.

Defendants presumably also contend that even if Plaintiff can make out a *prima facie* case, they have articulated a legitimate, nondiscriminatory reason for firing Plaintiff, and Plaintiff has

failed to produce any evidence that Defendants' stated reasons were pretextual.  In addition to the reasons Defendants assert to show that Plaintiff and Ledford were not similarly situated for purposes of the *prima facie* case, Defendants also explain that Plaintiff should have been terminated immediately because her conduct was far more serious than that of Ledford.  Defendants state that Plaintiff evaluated her own purported overtime claim and failed to present her overtime sheets to Dr. Ray before printing the first overtime check in the amount of $4,185.16.  Moreover, after Dr. Ray explicitly told Plaintiff that her conduct and method were impermissible, Plaintiff wrote another similar check and presented that second check to Dr. Ray for her signature.

Plaintiff's version of events, however, conflicts directly with the Defendants' account.  According to Plaintiff, Dr. Ray told her to be proactive and pay overtime during the month of May 2003.[7] Plaintiff submitted affidavits of others who affirm that Dr. Ray told Plaintiff to pay retroactive overtime during May.  (Pl.'s Dep., Ex. 34, 37.)  Furthermore, according to Plaintiff and Ledford, overtime time sheets and checks were always given to Dr. Ray at the same time, with no requirement that Dr. Ray approve the time sheets prior to the printing of the checks.  Therefore, according to Plaintiff, she legitimately assumed that Dr. Ray wanted her to process her overtime, and she followed the standard procedure by presenting the check and

---

[7]Defendants point out that Plaintiff did not calculate any other employee's overtime claim and did not present checks for any other employee's unpaid overtime for Dr. Ray's signature.  However, Plaintiff explained that she was working on overtime for other employees and simply had not completed the overtime time sheets for the other employees yet.  It is for the jury, not the Court, to weigh the credibility of Plaintiff's explanation for what transpired in May 2003.

time sheets to Dr. Ray.   Plaintiff maintains that Dr. Ray did not become upset over the first overtime check, but merely told Plaintiff that any overtime beyond that of the current fiscal year would have to be approved by the Board.   When Dr. Ray said she could not pay overtime beyond that of the current fiscal year, Plaintiff wrote the second check that contained only that amount of overtime.   According to Plaintiff, when presented with this second check, Dr. Ray merely stated that she wanted to share all of the overtime with the Board.

The Court finds that genuine issues of material fact exist as to whether Defendants' stated reason for terminating Plaintiff's employment was pretextual.   Accordingly, summary judgment is not appropriate in favor of the School District on Plaintiff's Title VII discriminatory discharge claim or Plaintiff's § 1981 and Fourteenth Amendment discharge claims.   The Court also finds that genuine issues of material fact exist as to whether Dr. Ray treated Plaintiff less favorably than her white predecessor during discharge so that the Court cannot determine as a matter of law that Dr. Ray is entitled to qualified immunity on Plaintiff's discriminatory discharge claim.[8]

2.  Retaliation

Plaintiff also asserts claims under Title VII and § 1981 for retaliation, claiming that the School District terminated her because she complained of race discrimination.   As explained by the Eleventh Circuit:

---

[8]Regarding Plaintiff's § 1983 claim and Dr. Ray's qualified immunity defense, the Court denies Defendants' Motion for Summary Judgment for the same reasons expressed in that section of this Order denying summary judgment on Plaintiff's discrimination claim regarding the initial terms and conditions of her employment.  *See supra.*

21

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. . . .[T]he causal link requirement under Title VII must be construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct.

*Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citations omitted).

Additionally, the Eleventh Circuit has held that § 1981 "supports a retaliation cause of action." *Webster v. Fulton County*, 283 F.3d 1254, 1257 (11th Cir. 2002). The Court finds for purposes of Defendants' summary judgment motion that the analysis of Plaintiff's Title VII and § 1981 retaliation claims is the same. *Cf. Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1120 (11th Cir. 2001); *see generally Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405 (11th Cir. 1998). The parties make no suggestion to the contrary.

Defendants contend that Plaintiff has failed to establish a *prima facie* case of retaliation because Plaintiff did not, during her employment, complain to anyone that she was the victim of race discrimination.

The record shows that Plaintiff complained on numerous occasions regarding her pay and lack of benefits. For example, she complained in November and December 2001 and again in April 2002. However, Plaintiff admitted in her deposition that she did not, at these times, believe that she was the object of race discrimination. Plaintiff

22

first alleged that she was the victim of race discrimination in her letter of June 7, 2003, addressed to Maurice King, Attorney at Law, and copied to Dr. Ray, every member of the Board, the Board's attorney, the State Department of Audits and Accounts, and the Professional Standards Committee.  In this letter, Plaintiff alleges that she was not given her correct salary and benefits from the start of her employment and was not given overtime pay because of her race. Plaintiff was terminated on June 10, 2003, three days after she wrote and mailed the June 7 letter.  A reasonable jury could conclude that Defendants were aware of her June 7 letter when they terminated her on June 10.[9]

The Court finds that Plaintiff has established a *prima facie* case of retaliation under Title VII and § 1981 because she has shown (1) that she engaged in a protected activity (complaining about race discrimination on June 7, 2003); (2) there was an adverse employment action (termination on June 10, 2003); and (3) the protected activity and the adverse employment action are not wholly unrelated.  "Close temporal proximity between the protected activity and the adverse employment action may be sufficient to show that the two were not wholly unrelated." *Bass*, 256 F.3d at 1119.  Plaintiff has established temporal proximity, and Defendants have failed to come forward with evidence to "negate the existence of a genuine issue of material fact

---

[9]There is a genuine issue of fact regarding whether the School District or Dr. Ray received the letter and therefore knew of Plaintiff's protected expression prior to June 10, 2003.  Dr. Ray testified that she could not remember if she received the letter or not, whereas John Slaughter, a Board member stated that he "probably" received it, but he could not "recall distinctly."  (Slaughter Dep. at 5.)

concerning a causal connection between" Plaintiff's termination and her complaint of race discrimination. *Id.* The Court further finds that genuine issues of material fact exist as to whether Defendants' stated reasons for terminating Plaintiff were pretextual as explained in more detail previously in this Order. *See supra.*

Based on the foregoing, Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claims under Title VII and § 1981 is denied, except, as previously indicated, Dr. Ray is entitled to summary judgment on Plaintiff's Title VII claims.[10]

3. First Amendment Claim

In addition to her race-based claims, Plaintiff asserts that she suffered retaliation in violation of her free speech rights under the United States Constitution.[11] *See Watkins v. Bowden*, 105 F.3d 1344, 1352 (11th Cir. 1997) ("A state may not demote or discharge a public employee in retaliation for protected speech.")  As explained by the Eleventh Circuit, such a claim should be subjected to the following analysis:

> First, a court must determine whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern.  If so, the district court must weigh the employee's first amendment interests against the

---

[10]Defendants also state that no claim of retaliation exists under the Equal Protection Clause of the United States Constitution.  The Court agrees that "no clearly established right exists under the *equal protection* clause to be free from retaliation." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995).  Therefore, to the extent that Plaintiff alleges an equal protection claim for retaliation (brought through § 1983), summary judgment is granted on that claim.

[11]Plaintiff also asserts this claim under the Georgia Constitution. The Court finds that the analysis of Plaintiff's state constitutional claims is the same as the analysis of the related federal claims, and therefore subject to the same disposition as Plaintiff's federal claims.

> interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. Should the employee prevail on the balancing test, the fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee. Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

*Id.* at 1352-53. "The threshold question of whether an employee's speech may be fairly characterized as constituting speech on a matter of public concern is a question of law." *Deremo v. Watkins*, 939 F.2d 908, 910 (11th Cir. 1991).

The Court finds that summary judgment is appropriate on this claim because Plaintiff has failed to show that her speech could be characterized as speech on a matter of public concern. "To fall within the realm of 'public concern,' an employee's speech must relate to a 'matter of political, social, or other concern to the community.'" *Morris v. Crow*, 117 F.3d 449, 456 (11th Cir. 1997) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Plaintiff's speech in this case does not satisfy this requirement. Plaintiff did not speak "on behalf of the public as a citizen," but only "spoke for herself as an employee." *Id.* at 457. The record reveals that Plaintiff complained on numerous occasions that she was not paid the correct salary and benefits, and in May and June 2003, she complained that she was not paid overtime. However, Plaintiff never complained to Defendants about payroll issues for any other employee. The purpose of Plaintiff's speech was to further her own private interest in receiving the scheduled salary, benefits, and overtime time pay,

as opposed to raising issues of public concern.  *See Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993).   Therefore, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims of retaliation in violation of her First Amendment rights under the United States Constitution.

4. Due Process Claims

Plaintiff claims that Defendants violated her procedural and substantive due process rights when they terminated her.[12]   In response to Plaintiff's procedural due process claim, Defendants contend that Plaintiff, an at-will employee, had no protected property interest in her job and, therefore, she cannot, as a matter of law, establish a procedural due process violation.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972).

It is uncontested that Plaintiff was an at-will employee with no employment contract.   This fact alone is not dispositive of Plaintiff's claim.  In *Roth*, the United States Supreme Court explained that if, when deciding to terminate someone, there is a charge against the employee that might damage his or her standing in the community (such as a charge of dishonesty or immorality), notice and an opportunity to be heard are essential.  408 U.S. at 558 (citing *Wisconsin v. Constantineau*, 400 U.S. 433 (1971)).  The Eleventh Circuit further analyzed the issue in *Clemons v. Dougherty County*, 684 F.2d 1365, 1371 (11th Cir. 1982):

---

[12]Plaintiff also asserts her due process claims under the Georgia Constitution.   These claims are also subject to the same analysis and disposition as her related federal claims.

> To prevail on [a] fourteenth amendment claim, [a plaintiff] must first establish that his termination was attended by stigmatizing charges which "might seriously damage his standing and associations in his community" or foreclose "his freedom to take advantage of other employment opportunities." If he so establishes, he must show that he was deprived of the due process hearing to refute the charges to which he was then entitled.

*Id.* In this case, Plaintiff has presented evidence from which a reasonable jury could conclude that her "termination was attended by stigmatizing charges." *Id.* The stated reason shown on Plaintiff's separation notice was that she was guilty of dishonest or immoral conduct; i.e., she wrote herself an unauthorized check. It is not clear from the record if Plaintiff was given an opportunity to refute these charges at the June 3, 2003 work session, as it appears that it was later in June that Dr. Ray recommended Plaintiff's termination to the Board, so that Plaintiff was not aware of the recommendation or given a chance to clear her name. Construing the facts and reasonable inferences in favor of Plaintiff as required at this stage of the proceedings, the Court finds that genuine issues of material fact exist as to Plaintiff's procedural due process claim. Therefore, Defendants' Motion for Summary Judgment is denied as to that claim.

Plaintiff also alleges that Defendants violated her substantive due process rights when they terminated her. It is clear that an allegation of termination of employment, even if allegedly for improper or pretextual reasons, implicates only procedural due process concerns and does not state a substantive due process claim. *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (holding that employment rights are simply "not subject to substantive due process protection under the Due Process Clause"); *see also Jordan v. Bd. of Pub. Safety*,

27

253 Ga. App. 339, 344, 559 S.E.2d 94, 98 (2002).  Therefore, the Court grants Defendants' summary judgment motion as to Plaintiff's substantive due process claim.

To summarize the Court's disposition of Plaintiff's federal law claims, the Court grants Dr. Ray's Motion for Summary Judgment as to each of Plaintiff's Title VII claims against her in her individual capacity.  The Court grants Defendants' Motion for Summary Judgment as to the following: 1) Plaintiff's claims for retaliation under the equal protection clause; 2) Plaintiff's claim under the First Amendment; and 3) Plaintiff's substantive due process claim.[13]  The Court denies summary judgment as to 1) Plaintiff's Title VII, § 1981 and § 1983 claims for discrimination and retaliation against the School District; 2) Plaintiff's § 1981 and § 1983 discrimination and retaliation claims against Dr. Ray in her individual capacity; and 3) Plaintiff's procedural due process claim against the School District.[14]

B.  PLAINTIFF'S STATE LAW CLAIMS

1.  Slander/Defamation

Plaintiff alleges that Defendants slandered/defamed her when they stated that she was terminated for writing an unauthorized payroll check payable to herself.  Defendants assert merely that truth is an absolute defense to slander/defamation, and they are entitled to

---

[13]Additionally, Defendants' Motion for Summary Judgment is granted as to Plaintiff's free speech and substantive due process claims under the Georgia Constitution.

[14]Defendants' motion is denied as to Plaintiff's procedural due process claim under the Georgia Constitution.

summary judgment because Plaintiff did actually write unauthorized checks.

The Court finds that genuine issues of material fact exist as to whether the check was "authorized" or not. Plaintiff maintains that Dr. Ray specifically told her to be proactive and pay overtime during May 2003. Therefore, Plaintiff testified that she assumed she had the authority to write the overtime check and present the same to Dr. Ray for her signature. Furthermore, Plaintiff contends that she followed the same procedure she always followed with overtime checks by attaching the time sheets with the proposed check and leaving all the documents for Dr. Ray to review and sign. Defendants describe a different version of events. However, for purposes of a summary judgment motion, the facts must be viewed in the light most favorable to the party opposing summary judgment, and all inferences from these facts must be viewed in favor of the nonmoving party. *See Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983). Genuine issues of material fact exist as to whether the check was authorized. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's slander/defamation claim is denied. *See generally Hodges v. Tomberlin*, 170 Ga. App. 842, 319 S.E.2d 11 (1984).

2.  Breach of contract claim.

Plaintiff claims that Defendants breached the contract that they had with her, although she admits that she did not have any contract of employment with the School District or the Board. As Plaintiff did not have an employment contract, Defendants could not breach what did not exist. *See generally Grace v. Roan*, 145 Ga. App. 776, 245 S.E.2d

17 (1978)(explaining that oral contracts for employment lasting more than one year are generally barred by the Statute of Frauds and without written employment contracts, at-will employees may be terminated with or without cause). Therefore, Defendants' Motion for Summary Judgment is granted as to Plaintiff's breach of contract claim.

3.   Tortious Interference with Business Relations Claim

Plaintiff asserts a claim against Dr. Ray for tortious interference with her employment relationship. The elements of a tortious interference claim are as follows:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Blakey v. Victory Equip. Sales*, 259 Ga. App. 34, 38, 576 S.E.2d 288, 292 (2002).

The Georgia courts have held that "[p]roof of a valid and enforceable contract is not required as an element of a cause of action for intentional tortious interference with business relations." *Renden, Inc. v. Liberty Real Estate Ltd. P'ship. III*, 213 Ga. App. 333, 334, 444 S.E.2d 814, 817 (1994). "[E]ven though a person's employment contract is at will he has a valuable contract right which may not be wilfully interfered with by a third person." *Troy v. Interfinancial, Inc.*, 171 Ga. App. 763, 766, 320 S.E.2d 872, 877 (1984).

Defendants argue that summary judgment is appropriate on this claim because Plaintiff has failed to establish the first element of this claim.  Specifically, Defendants maintain that because Dr. Ray had the right to participate in decisions related to Plaintiff's employment, the exercise of that right was "'not and cannot be considered an interference with a contractual or potential contractual relationship.'" *Disaster Servs., Inc. v. ERC P'ship*, 228 Ga. App 739, 742, 492 S.E.2d 526, 529 (1997).

While it is undisputed that Dr. Ray had a right to involve herself in Plaintiff's employment, the record does not show that she had the "unconditional authority to discharge [P]laintiff." *Favors v. Alco Mfg. Co.*, 186 Ga. App. 480, 484, 367 S.E.2d 328, 332 (1988). Instead, it appears that Dr. Ray could only recommend discharge, and the Board had the ultimate authority to terminate Plaintiff.  As the Board had the unconditional authority to discharge Plaintiff, the Board cannot be guilty of tortious interference with Plaintiff's employment relationship.  *Id.* at 484.  However, in relation to supervisors who do not have unconditional authority to terminate an employee (such as Dr. Ray), courts in Georgia have held as follows:

> [W]here an employee's discharge is procured through the conduct of a supervisor who does not have the absolute right to fire that employee without first obtaining the advise and consent of his superiors, the supervisor may be held liable for unlawful interference with the employee's employment, even though the employment is at-will insofar as the company is concerned.

*Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672, 347 S.E.2d 619, 622 (1986).

31

As it does not appear that Dr. Ray had the absolute right to fire Plaintiff, she could potentially be liable for unlawful interference with Plaintiff's employment.  Genuine issues of material fact remain regarding whether Plaintiff has shown the other three elements of a claim for tortious interference with business relations.  Therefore, summary judgment is denied as to Plaintiff's claim against Dr. Ray.

4. Intentional Infliction of Emotional Distress Claim

Plaintiff contends that Defendants' conduct in terminating her employment amounted to intentional infliction of emotional distress. Plaintiff alleges that Dr. Ray and the Board accused her of attempting to commit theft when she wrote the payroll check for $4,185.84. Dr. Ray confirms that she thought Plaintiff committed a "criminal act" when she wrote this check and placed the same in the stack of payroll checks.  Ray Aff. ¶ 34.  Plaintiff testified that because Defendants voiced this false accusation to the Georgia Department of Labor, she had to endure a humiliating battle to receive her unemployment benefits.  Plaintiff further stated that Defendants falsely charged her with computer theft, a charge that led to her arrest in December 2003. As a result of these actions, Plaintiff states that she suffers from depression, high blood pressure, loss of reputation, and embarrassment.

The Eleventh Circuit Court of Appeals has explained that:

[I]n order to prevail in Georgia on a claim of intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe.  In order to sustain this cause of action, the defendant's conduct, in light of the totality of the

32

circumstances, "must have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff."   Moreover, "the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist."

*Lightning v. Roadway Express*, *Inc.*, 60 F.3d 1551, 1558 (11th Cir. 1995)(citations omitted.)

Defendants contend that summary judgment is appropriate on this claim because Plaintiff has not shown that Defendants' conduct was "extreme and outrageous." *Id.* Without condoning Defendants' alleged conduct, the Court finds that it does not rise to the level of extreme outrageousness under the heightened requirements of Georgia law. *See, e.g.*, *Lively v. McDaniel*, 240 Ga. App. 132, 134, 522 S.E.2d 711, 713-14 (1999) (holding that employer's statements that former employee retained and stole valuable documents after his termination were not sufficiently outrageous to be actionable for intentional infliction of emotional distress); *Peoples v. Guthrie*, 199 Ga. App. 119, 121, 404 S.E.2d 442, 444 ("A false accusation of dishonesty or lack of integrity in connection with one's employment is undoubtedly distressful, . . . but it is a common vicissitude of ordinary life. . . . [S]uch conduct [is] not . . . the intentional infliction of emotional distress."). Therefore, the Court grants summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

5. Negligent Retention Claim

Plaintiff's negligent retention claim alleges that the School District knew, or should have known, of Dr. Ray's discriminatory

33

conduct, but it continued Dr. Ray's employment.  Defendants assert that because Dr. Ray committed no unlawful acts, this claim cannot survive.

O.C.G.A. § 34-7-20 provides that "[t]he employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency."  The Georgia Supreme Court has explained "that an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."  *Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 863, 596 S.E.2d 604, 606 (2004).

Plaintiff alleges that she received less salary and benefits than she should have and was eventually terminated due to race discrimination on the part of Dr. Ray.  Assuming *arguendo* the truth of Plaintiff's claims of discrimination, Plaintiff has pointed to no evidence to establish that the School District knew or should have known that Dr. Ray had the "tendency" to engage in race discrimination.  The record shows that Plaintiff never complained of race discrimination until June 7, 2003, approximately three days before she was terminated.  There is no other evidence in the record of complaints from others regarding Dr. Ray's allegedly racially discriminatory behavior.  Therefore, summary judgment is appropriate on this claim.  *Munroe*, 277 Ga. at 866, 596 S.E.2d at 608.

To summarize the Court's disposition of Plaintiff's state law claims, the Court grants summary judgment in favor of Defendants on

34

Plaintiff's claims for free speech, substantive due process, breach of contract, intentional infliction of emotional distress, and negligent retention.  The Court denies Defendants' Motion for Summary Judgment on Plaintiff's state law claims for slander/defamation, denial of procedural due process, and tortious interference with business relations.  The Court further finds that Dr. Ray is not entitled to official immunity under Georgia law on these claims because genuine issues of material fact exist as to her official immunity defense.

V.   CONCLUSION

The Court **GRANTS** summary judgment on the following:

(1) All of the Title VII claims against Dr. Ray in her individual capacity;

(2) All claims of retaliation brought under the Equal Protection Clause of the United States Constitution;

(3) All claims of retaliation brought under the First Amendment to the United States Constitution and the Georgia Constitution;

(4) All claims regarding substantive due process under the United States Constitution and the Georgia Constitution;

(5) All breach of contract claims brought under state law;

(6) All negligent retention claims brought under state law; and

(7) All claims for the intentional infliction of emotional distress.

The Court **DENIES** summary judgment on the following:

(1) Claims of race discrimination under Title VII, § 1981, and § 1983; except that Dr. Ray, in her individual capacity, is entitled to summary judgment on the Title VII race discrimination claim;

(2) Claims of retaliation under Title VII, § 1981, and § 1983; except that Dr. Ray, in her individual capacity, is entitled to summary judgment on the Title VII retaliation claims;

(3) Claims regarding procedural due process under the United States Constitution and the Georgia Constitution;

(4) Claims of slander/defamation under state law; and

(5) Claims against Dr. Ray for tortious interference with business relations under state law.[15]

IT IS SO ORDERED, this 17th day of June, 2005.

S/Clay D. Land
                              CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE

---

[15]Defendants did not seek summary judgment as to the claim asserted by Plaintiff under the Fair Labor Standards Act.  Therefore, this claim remains pending as well.